**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Daniel Ellington,

           Petitioner,

v.

LS Brianna Martin for, et al.,

           Defendants.

No. CV-22-01782-PHX-SMB

**ORDER**

      Before the Court are Defendants L.S., A.S., M.H., and D.H.'s (referred to as "Claimants") "Motion to Set Aside Default Judgement, Vacate Order of Final Decree of Exoneration and Judgment of Dismissal and for Leave to File Claims and Answer to Plaintiffs in Limitations' Complaint" (Doc. 19). Petitioner Daniel Ellington as owner of M/V 2001 33' Formula SS (Sun Sport) Cruiser, TNRD9878I001, *in rem*, including its owners and crew (referred to as "Plaintiffs in Limitation") filed a Response. (Doc. 21.) Claimants filed a Reply (Doc. 22). The Court exercises its discretion to resolve this Motion without oral argument. *See* LRCiv 7.2(f) ("The Court may decide motions without oral argument."). After considering the parties' arguments, Court will grant Claimants' Motion for the reasons discussed below.

## I.    BACKGROUND

      On May 21, 2022, a boating accident occurred in the Cole's Bay area of Lake Pleasant. (Doc. 19 at 2.) The boat was owned by Daniel Ellington, who was not present during the incident. On the boat that day were Daniel Ellington's son, Christopher

Ellington, Christopher's wife and children, and Decedent Tehanah Smith and her four minor children.  (*Id.*)  Christopher was driving the boat and towing his daughter and Decedent's daughter on an innertube.  (*Id.*)  At some point the tube began to "submarine" and go under the water.  (*Id.*)  As a result, the rope connecting the tube to the boat snapped, and the two girls fell off the tube and into the lake.  (*Id.*)

Christopher put the boat in reverse to retrieve the girls.  (*Id.*)  Simultaneously, Decedent dove into the water to assist the girls.  (*Id.*)  Claimants allege the police report reflects that "Mr. Ellington admitted to responding deputies that when he saw Decedent go into the water, he went to put the boat into drive and go forward, but instead accidentally grabbed the throttle lever and accelerated in reverse directly into her." (*Id.* at 2–3.)  The boat's props caused Decedent injuries that resulted in her death later that day.  (*Id.* at 3.)  Claimants allege they were unaware of Christopher's admission to police until April 10, 2023, when their counsel received the investigative report from the Maricopa County Sheriff's Office.  (*Id.*)

Because Decedent's children were minors, following her death they were split up amongst surviving family members.  L.S. went to live with her aunt, Briana Bethany Martin, in California.  (*Id.*)  A.S. and M.H. went to live with their biological father, Kurtis Heyne, in Montana.  And D.H. went to live with his aunt Cierra Ortiz in Nevada.  (*Id.*)  Martin and Ortiz subsequently obtained guardianships over the children in their care.  (*Id.*)

In the summer of 2022, Martin and Christopher had discussions about the Claimants making claims against Daniel Ellington for Decedent's death.  (*Id.*)  Christopher informed Daniel of this information, and let Martin know that claims were opened with their insurance carrier.  (*Id.*)  In December 2022, Martin requested a copy of the applicable insurance policy from Christopher via text message and provided him with her attorney's name and contact information.  (*Id.*)

On October 18, 2022, Plaintiffs in Limitation filed a Complaint for Exoneration from or Limitation of Liability.  (*Id.* at 4.)  On November 18, 2022, the Court issued an

"Order Approving Petitioner's Affidavit of Valuation and Ad Interim Security, Directing Issuance of Notice and Filing of Claims, and Restraining Prosecution of Claims." (*See* Doc. 11.)   The Order instructed Plaintiff in Limitation to publish service and mail copies of the notice of the action to all known claimants. (*See* Doc. 11-1.)   On November 21, 2022, Plaintiffs in Limitation filed a Certificate of Service avowing that notice had been mailed to all known claimants. (*See* Doc. 12.)   Claimants allege they received no notice and hence did not file a response. (Doc. 19 at 4.)

Plaintiffs in Limitation also published notice in the Record Reporter between November 28, 2022 and December 19, 2022. (*See* Doc. 13.)   The Record Reporter is an Arizona newspaper in general circulation within Maricopa County and Pima County. (Doc. 19 at 5.)   Claimants allege that neither themselves nor their guardians saw the publication because they do not live in Arizona. (*Id.*)   Ultimately, Claimants did not file a timely claim in response to the published notice before the January 17, 2023 deadline. (Docs. 21 at 2–3.)

On February 6, 2023, Claimants' current counsel left a voicemail with Daniel Ellington's insurance carrier, Janice McIntyre, requesting the insurer's claim number. (*Id.* at 3.)   McIntyre provided Claimants' counsel this information by email the same day. (*Id.*)   McIntyre also provided Claimants' paralegal with Plaintiffs in Limitation's counsel's name and contact information. (*Id.*; *see* Doc. 21-1 at 3.)   In response, Claimants' paralegal provided McIntyre with a letter of representation and indicated she would contact Plaintiff in Limitations' counsel. (*Id.*)   On February 7, 2023, Plaintiffs in Limitations' counsel emailed Claimants' paralegal the following:

> In accordance with Admiralty Law, we have filed a Petition for Exoneration and Limitation of Liability Action in Arizona Federal Court some time ago. Attached are all pertinent pleadings. This includes the Order of the Court that any claims must have been filed by **January 17, 2023 or be defaulted**. That deadline has passed without any claims being made in response to the properly filed and published Notice/Order.
> Respectfully, at this time it is our position that any claims on behalf of your clients are time barred. Thank you.

(Doc. 21-1 at 5.)

That same day, Claimants' counsel responded via email requesting insurance information for Christopher Ellington.   (Doc. 21-1 at 9.)   Counsel for Plaintiffs in Limitation responded on February 9, 2023, reiterating their position on Exoneration, but also providing the requested insurance information.  (*Id.* at 8.)

On February 27, 2023, an Entry of Default was issued.  (Doc. 16.)  On April 13, 2023, the Court entered final default judgment exonerating from liability Daniel Ellington, his vessel, and his crew from liability on all claims arising out of the May 21, 2022 accident and all non-appearing claimants.  (Doc. 18.)  Claimants allege they were unable to address the default judgment as they only recently learned of its existence.  (*Id.*)

Here, Claimants ask the Court to vacate the default judgment entered pursuant to Federal Rule of Civil Procedure Rule 60(b)(4) for being void, or alternatively under Rule 60(b)(1) because Claimants were surprised by the existence of default in this case.  (*See* Doc. 19.)

## II.   LEGAL STANDARD

Default judgments are "appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits."  *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984).  "The court may set aside an entry of default judgment for good cause, and it may set aside a final default judgment under Rule 60(b)."  Fed. R. Civ. P. 55(c).  Rule 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representatives from a final judgment, order, or proceeding for the following reasons:
>> (1) mistake, inadvertence, surprise, or excusable neglect;
>> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>> (3) fraud (whenever previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>> (4) the judgment is void;
>> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  "Where there has been *no* merits decision, appropriate exercise of district court discretion under Rule 60(b) requires that the finality interest should give way fairly readily, to further the competing interest in reaching the merits of a dispute." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001).  However, "[a] final judgment is 'void' for purposes of Rule 60(b)(4) only if the court that considered it lacked jurisdiction, either as to the subject matter of the dispute or over the parties to be bound, or acted in a manner inconsistent with due process of law."  *U.S. v. Berke*, 170 F.3d 882, 883 (9th Cir. 1999).

## III.   DISCUSSION

### A.   Due Process

A Court may set aside a default judgment when it is void.  Fed. R. Civ. P. 60(b)(4).  Claimants argue default judgment is void here because it was entered against minors in violation of Rule 55(b)(2).  Under the rule, "[a] default judgment may be entered against a minor or incompetent person *only if represented by a general guardian*, conservator, or other like fiduciary *who has appeared*."  Fed. R. Civ. P. 55(b)(2) (emphasis added).  Here, A.S., M.H., and D.H., all of whom are minors, had Default Judgment entered before their legal guardians appeared.  Because this violates Rule 55(b)(2), default judgment was erroneously entered at this time.  *See Prudential Ins. Co. of Am. v. Wells*, No. CV-15-08170-PCT-DGC, 2016 WL 687135, at *2 (D. Ariz. Feb. 19, 2016).

Plaintiffs in Limitation do not dispute this, but instead argue that a judgment is not void merely because it is erroneous.  *Berke*, 170 F.3d at 883.  Plaintiffs in Limitation also cite to *United Student Aid Funds, Inc., v. Espinosa* for the proposition that "[t]he list of [Rule 60(b)(4)] infirmities is exceedingly short; otherwise, Rule 60(b)(4)'s exception to finality would swallow the rule."  559 U.S. 260, 270 (2010).  However, the Supreme Court in that case found that while judgments are not void for merely being erroneous, "Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of

notice or the opportunity to be heard." *Id.* at 270–71.

In *Espinosa*, the issue was not whether the Bankruptcy Court had jurisdiction, but whether the judgment was void under due process grounds due to Espinosa's failure to serve the summons and complaint on the opposing party. *Id.* at 272. The *Espinosa* Court clarified that: "Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (cleaned up). There, the Court reasoned that the opposing party's due process rights were not violated because they received *actual* notice of the filing and the contents of Espinosa's plan—which "more than satisfied" due process rights. *Id.*

The same is not true here. First, Plaintiffs in Limitation do not dispute Claimants' assertions that they did not receive notice by mail or from the publications in Arizona—in spite of Plaintiff in Limitations' previous certification to the Court that all known claimants had been notified by mail. (*See* Docs. 12; 21.) In fact, Plaintiffs in Limitation admit to not mailing notice to Claimants, arguing "[n]o claimants timely presented a claim in response to the published Notice either by filing said claim with this Court or serving it upon undersigned counsel for Petitioner. Therefore, Petitioner had no known claimants for which to mail copies of the Notice, Complaint for Exoneration/Limitation of Liability and other related Orders and pleadings." (Doc. 21 at 2–3.)

Rather, Plaintiffs in Limitation argue notice was provided because L.S.'s guardian, Martin, had counsel who was advised of the claim deadline. (*Id.* at 11.) To support this assertion, Plaintiffs in Limitation cite to an email from their counsel notifying Martin's paralegal that read:

> In accordance with Admiralty Law, we have filed a Petition for Exoneration and Limitation of Liability Action in Arizona Federal Court some time ago. Attached are all pertinent pleadings. This includes the Order of the Court that any claims must have been filed by **January 17, 2023 or be defaulted**. That deadline has passed without any claims being made in response to the properly filed and published Notice/Order.
> Respectfully, at this time it is our position that any claims on behalf of your clients are time barred. Thank you.

(Doc. 21-1 at 5.)

However, this email notifies Claimants of the claim deadline after it passed, not before.  Plaintiffs in Limitations therefore fail to present any evidence that Claimants had actual notice of the claim prior to the passing of its deadline to respond.  *C.f. Espinosa*, 559 U.S. at 272.  There is also no dispute that Plaintiffs in Limitation knew of Claimants' minor status, as is reflected in their Complaint.  Because an Entry of Default against minors is expressly prohibited under the Federal Rules before their guardian makes an appearance, this error affected Claimants' due process rights under the law.  *See* Fed. R. Civ. P. 55(b)(2).  Plaintiffs in Limitation do not dispute this.  The Court thus finds the due process grounds sufficient to vacate the Default Judgment as void under Rule 60(b)(4).

### B.    Jurisdiction

Additionally, Claimants argue that because Plaintiffs in Limitation failed to complete service in accordance with Supplemental Rule F(4), Claimants were not sufficiently served with process—a prerequisite to the Court's exercise of personal jurisdiction.  *See S.E.C. v. Internet Sols. For Bus. Inc.*, 509 F.3d 1161, 1165 (9th Cir. 2007).  Under Supplemental Rule F(4), in addition to publishing notice, a plaintiff in limitation must mail a copy of "the notice [of the action] to every person known to have made any claim against the vessel or the plaintiff arising out of the voyage or trip on which the claims sought to be limited arose.  Fed. R. Civ. P. Supp. R. A.M.C F(4).  Moreover, "a defendant moving to vacate a default judgment based on improper service of process, where the defendant *had actual notice of the original proceeding but delayed in bringing the motion until after entry of default judgment*, bears the burden of proving that service did not occur."  *S.E.C.*, 509 F.3d at 1163.

As previously discussed, there is no evidence to support a finding that Claimants had actual knowledge of the suit until after the deadline to respond passed.  However, Claimants did not file a motion before the Entry of Default, or the final Default Judgment.  The burden is therefore on Claimants to prove that service of process was not

completed.  The Court finds sufficient evidence was alleged for the publications made in Arizona through the Record Reporter.  Although Claimants argue they never saw the publications because they do not reside in Arizona, Plaintiffs in Limitation provided the dates the publications ran, and Claimants do not object to its validity.

But Plaintiffs in Limitation were also required to mail notice to all known claimants.  As discussed above, Plaintiffs in Limitation do not provide any evidence that service of process was mailed to Claimants—barring their previous certification to the Court that it was completed.  In contrast, Martin submitted an affidavit attesting that she never received any notice of the Limitation of Action lawsuit by mail or otherwise.  (Doc. 19-1 at 2–3.)  Plaintiffs in Limitation do not dispute this.  Instead, they admit to not mailing any notices out because no claimants responded to the published notices circulating in Arizona.

This reasoning does not satisfy Fed. R. Civ. P. Supp. R. A.M.C F(4).  Reason being, Claimants provided proof that on December 7, 2022, Martin and Christopher Ellington exchanged text messages where Martin informed him about the minor Claimants' claims against Plaintiffs in Limited Liability.  (*See* Doc. 19-1 at 4–7.)  As such, Plaintiffs in Limited liability were aware of "known claimants" to mail notice but chose not to.  Therefore, the Court finds Claimants satisfied their burden of proving insufficient service of process by mail.  It follows that the Court lacked personal jurisdiction over Claimants at the time Entry of Default was entered.  *See* S.E.C., 509 F.3d at 1165 ("A final judgment is void, and therefore must be set aside under Federal Rule of Civil Procedure 60(b)(4), 'only if the court that considered it lacked jurisdiction . . . over the parties to be bound.'" (quoting *United States v. Berke*, 170 F.3d 882, 883 (9th Cir. 1999)).

The Court will vacate the April 13, 2023 Default Judgement as void under Rule 60(b)(4) for due process violations under Rule 55(b)(2), and for a lack of personal jurisdiction due to improper service of process under Fed. R. Civ. P. Supp. R. A.M.C F(4).  Accordingly, the Court will not engage in the parties' alternative arguments over

whether Default Judgment should be vacated pursuant to Rule 60(b)(1).

**IV.    CONCLUSION**

**IT IS ORDERED** granting Claimants' "Motion to Set Aside Default Judgement, Vacate Order of Final Decree of Exoneration and Judgment of Dismissal and for Leave to File Claims and Answer to Plaintiffs in Limitations' Complaint."  (Doc. 19.)

**IT IS FURTHER ORDERED** ordering the Clerk of Court to vacate the Default Judgement Entered on April 13, 2023 as void under Federal Rule of Civil Procedure Rule 60(b)(4).

**IT IS FURTHER ORDERED** granting Claimants leave to file an answer and claims.

**IT IS FURTHER ORDERED** vacating oral argument scheduled June 30, 2023.

Dated this 28th day of June, 2023.

Honorable Susan M. Brnovich
United States District Judge