**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Ellington, | No. CV-22-01782-PHX-SMB |
| Petitioner, | **ORDER** |
| v. | |
| L.S., et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to R. 12(b)(1) or for Partial Dismissal of Claims of Christopher Ellington Pursuant to R. 12(b)(6) (Doc. 28). Petitioner has filed a response (Doc. 29), to which Defendants filed a reply (Doc. 30). The Court exercises its discretion to resolve this Motion without oral argument. *See* LRCiv 7.2(f) ("The Court may decide motions without oral argument."). After consideration of the pleadings and relevant law, the Court will grant the motion.

**I.    BACKGROUND**

This case stems from a boating accident on Lake Pleasant on May 21, 2022. (Doc. 28 at 2.) Petitioner is the owner of the Sun Sport Cruiser that was used by the parties during the accident. (Doc. 30 at 1.) Petitioner's son, Chris Ellington, was driving the boat at the time of the accident. (*Id.*) Chris went out on the lake with his wife, their two minor children and six other guests, including Tehanah Smith and her four minor children. (*Id.* at 2.) The guests were taking turns riding an inner tube towed by the Sun Sport throughout the day.

(*Id.*)  During or after the last ride, Tehanah jumped off the rear of the boat while the motor was still running.  (*Id.*)  Her leg was injured by one of the boat's propellers.  (*Id.*)  Chris jumped in the water, pulled Tehanah Smith into the boat and attempted life saving measures until they got back to the dock, where emergency responders took over.  (*Id.*)  Tehanah later died from her injuries.  (*Id.* at 3.)  Petitioner filed a Complaint seeking for exoneration from or limitation of liability under the Limitation of Liability Act provisions in 46 U.S.C. § 30501 *et seq.* on October 18, 2022.  (Doc. 1.)

The Court entered default judgment on April 13, 2023, exonerating Daniel Ellington, his vessel, and his crew from liability on all claims arising out of the May 21, 2022 accident and all non-appearing claimants. (Doc. 18.)  Defendants, the minor children of Tehanah, learned of the default and filed their "Motion to Set Aside Default Judgement, Vacate Order of Final Decree of Exoneration and Judgment of Dismissal and for Leave to File Claims and Answer to Plaintiffs in Limitations' Complaint" (Doc. 19) on May 5, 2023. (Doc. 19.)  The Court granted the motion and gave Defendants leave to file an answer and claims.  (Doc. 27.)  Before filing their answer to Defendants asserted claims, Defendants filed Motion to Dismiss at issue here.  (Doc. 28.)

As a preliminary matter, Petitioner asks this Court to deny the Motion to Dismiss because it was not expressly authorized in the Court's order vacating the default judgment. (Doc. 29.)   The Court rejects the notion that because the Court's order authorized Defendants to answer, they are not allowed to file the current motion.  At any time before an answer is filed, a party may file a motion to dismiss under Federal Rule of Civil Procedure 12(b).  A motion to dismiss for lack of subject matter jurisdiction can be made at any time.  *See* Fed. R. Civ. P. 12(b)(1), 12(h)(3).  Therefore, the Court will entertain this Motion to Dismiss.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a claim for lack of subject-matter jurisdiction.  "Federal courts are courts of limited jurisdiction" and may only hear cases as authorized by the Constitution or Congress.

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A court has subject-matter jurisdiction over claims that "aris[e] under the Constitution, laws, or treaties of the United States" and over "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between" diverse parties. 28 U.S.C. §§ 1331, 1332(a). Because our jurisdiction is limited, it is to be presumed that a cause lies outside of it, and the burden of establishing jurisdiction is on the party asserting it. *Kokkonen*, 511 U.S. at 377.

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* In this circumstance, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in the plaintiff's favor, then "determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "A 'factual' attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id.* In a facial attack, the Court's inquiry is confined to the allegations in the complaint, while a factual attack permits the court to look beyond the complaint. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2004).

The party asserting jurisdiction bears the burden of proof. *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990). "Because subject-matter jurisdiction involves a court's power to hear a case, it can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). Therefore, if the Court determines at any point that it lacks subject-matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3).

A federal court's power to hear cases in admiralty comes from the U.S. Constitution and has been further authorized by statute. U.S. Const., Art. III, § 2; 28 U.S.C. § 1333(1). "[A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534

(1995). To give rise to admiralty jurisdiction a party must establish that the tort in question (1) happened on navigable waters of the United States (the location test) and (2) that the tort has a significant nexus with traditional maritime activity (the nexus test). *See Taghadomi v. United States*, 401 F.3d 1080, 1084 (9th Cir. 2005); *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 268 (1972).

### III. DISCUSSION

A party seeking dismissal for lack of jurisdiction may make either a facial or factual attack. *See Meyer*, 373 F.3d at 1039. Petitioner argues Defendants make a facial attack. (Doc. 29 at 4.) Defendants disagree, instead arguing that they make a factual attack regarding why this Court does not have jurisdiction. (Doc. 30 at 3.) The Court agrees with Defendants and will analyze their factual attack on jurisdiction accordingly.

Defendants' challenge to jurisdiction centers on the nature of Lake Pleasant—the body of water where the accident occurred. (Doc. 28 at 2; Doc. 29 at 2.) Therefore, the Court will apply the two-part test to determine whether it has admiralty jurisdiction. The first issue here is "the location test"—resolving whether the tort happened "on or over navigable waters." *See Taghadomi*, 401 F.3d at 1084. To be a navigable water of the United States for admiralty jurisdiction purposes, "the water body in question must itself or in connection with other navigable waters form an uninterrupted highway over which commerce might be carried on *among several states* or with foreign nations." *Stewart v. United States ex rel. Dep't. of Agric.*, 639 F. Supp. 2d 1190, 1196 (D. Or. 2009) (emphasis added); *The Daniel Ball*, 77 U.S. (10 Wall.) 557 (1870) (waters are navigable only "when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water.") Otherwise, even if navigable, it is a navigable water of the State, *not* a navigable water of the United States. *See Sierra Pacific Power Co. v. Fed. Energy Reg. Comm.*, 681 F.2d 1134, 1137–38 (9th Cir. 1982).

Defendants argue that Lake Pleasant does not satisfy this definition of a navigable

1  water because it is wholly interstate and does not connect to other states or countries. (Doc.
2  28 at 5.) Defendants also argue that Lake Pleasant is not and has not ever been used for
3  commercial shipping or fishing and is only used for recreational purposes. (Doc. 28 at 7.)
4  Therefore, they argue it cannot be considered a navigable water under the location test. *See*
5  *Adams v. Montana Power Co.*, 528 F.2d 437, 439 (9th Cir. 1975) ("Neither non-
6  commercial fishing nor pleasure boating nor water skiing constitutes commerce.
7  Commerce for the purpose of admiralty jurisdiction means activities related to the business
8  of shipping.")

9  Alternatively, Petitioner argues that Lake Pleasant *is* an intrastate lake because it
10 was formed by damming the Agua Fria River—an intrastate intermittent stream that
11 occasionally flows into the Gila River. (Doc. 21 at 9.) In support of this, Petitioner
12 provides additional information about the Aqua Fria River and Gila River from Wikipedia
13 and the United States Geological Survey. (Doc. 29 at 5–6 n.3.) However, after reviewing
14 Petitioner's own information, the Court finds it does not support that Lake Pleasant is a
15 *navigable* interstate body of water. (*See id.*) ("Even the Gila, however, is a through-
16 flowing stream only after the heavy rains. The principal tributaries of Gila River in this
17 region are Agua Fria and Hassayampa rivers. They contain flowing water after rains and
18 have water in certain sections of their beds during most of the year. This is particularly
19 true of the Agua Fria.") To be "navigable" one would have to be able to travel from Lake
20 Pleasant to the Colorado River and into another state. Even taking this information as true,
21 no boat could actually make it from Lake Pleasant to the Colorado River. Parts of both the
22 Aqua Fria River and Gila River are intermittently dry and as Petitioner admits, generally
23 only have flowing water after rains. (Doc. 29 at 6.)

24 Despite this, Petitioner argues that Lake Pleasant is still navigable because it could
25 be *made* navigable. In making this assertion Petitioner relies on *Economy Light & Power*
26 *Company v. United States*, 256 U.S. 113 (1921) and *United States v. Appalachian Electric*
27 *Power Company*, 311 U.S. 377 (1940). In both cases, the Supreme Court found a particular
28 body of water to be navigable because either it could be made navigable or had previously

been navigable. *See Economy Light*, 256 U.S. at 122; *Appalachian Electric*, 311 U.S. at 408–09. Their persuasive value is misstated. In both cases, the Court was not analyzing "navigable" for admiralty jurisdiction purposes, but rather for commerce clause purposes. The Ninth Circuit has recognized that the definitions of navigability are different under the commerce clause and for purposes of invoking admiralty jurisdiction. *See Adams*, 528 F.2d at 440. Further, other courts have similarly found that just because a waterway was historically navigable does not mean it remains so after its configuration is changed. *See Alford v. Appalachian Power Co.*, 951 F.2d 30, 33 (4th Cir. 1991) (finding the Roanoke River was no longer navigable after a dam was built); *Three Buoys Houseboat Vacations U.S.A. Ltd. v. Morts*, 921 F.2d 775, 779 (8th Cir. 1990) (finding no admiralty jurisdiction because "*[p]resent* navigability is the standard, and present navigability, as we construe it for admiralty and like purposes, is not possible on the Lake of the Ozarks."). Here, in its present state, Lake Pleasant is not navigable and therefore fails the location test needed for this Court to have jurisdiction. Because the Court finds that Lake Pleasant fails the location test, it does not need to address whether the tort has a significant nexus with maritime activity. *See Executive Jet Aviation*, *Inc*, 409 U.S. at 268.

Because the Court finds Lake Pleasant is not a navigable water of the United States, it therefore lacks subject-matter jurisdiction to hear this case. Therefore, there is no need to address Defendants other arguments (*See* Doc. 28 at 7). The Court will also deny the alternate request for relief as moot.

## IV. CONCLUSION

**IT IS ORDERED granting** Defendants' Motion to Dismiss for lack of Subject Matter Jurisdiction Pursuant to R. 12(b)(1) (Doc. 28). Accordingly, the request for partial dismissal of claims of Christopher Ellington pursuant to Fed. R. Civ. P. 12(b)(6) is denied as moot.

…

…

…

**IT IS FURTHER ORDERED directing** the Clerk of Court to enter judgment consistent with this Order and terminate this case.

Dated this 8th day of February, 2024.

_____
Honorable Susan M. Brnovich
United States District Judge